ATLANTIC TURPENTINE & PINE TAR CO. v. ROSIN & TURPENTINE EXPORT CO.

(District Court, S. D. Georgia, E. D.   February 5, 1918.)

No. 57.

1. PRINCIPAL AND AGENT ⬤➾69(4)—SALES AGENT—RIGHT OF AGENT TO PURCHASE.

Under Civ. Code Ga. 1910, § 3582, declaring that without the express consent of the principal, after a full knowledge of all the facts, an agent employed to sell cannot be himself the purchaser, an agent to sell is not, without the consent of his principal, authorized to make sales in foreign markets under an arrangement whereby the agent should assume all risks and contingencies of loss and take all the profits, as this would amount to a sale by the agent to himself, and one cannot lawfully do by indirection what he is positively forbidden to do.

2. PRINCIPAL AND AGENT ⬤➾84—SALES AGENTS—COMMISSIONS.

Where a sales agent, without the consent of his principal, sold goods in a foreign market under an arrangement whereby he was to assume any loss incurred and to take the profits, such agent, having violated his agreement, is not, under Civ. Code Ga. 1910, § 3586, entitled to any commissions, but the principal is entitled to all profits, subject to no deduction for commissions.

──────────

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Bill for accounting by the Atlantic Turpentine & Pine Tar Company against the Rosin & Turpentine Export Company. Decree for complainant.

O'Byrne, Hartridge & Wright, of Savannah, Ga., for plaintiff.
Osborne, Lawrence & Abrahams, of Savannah, Ga., for defendant.

EVANS, District Judge. This is a bill by a principal against his sales agent for an accounting for profits alleged to have been received by the sales agent from the sale of consignments to himself without the principal's knowledge or consent. The contract is contained in a letter from the agent to his principal, proposing to sell the latter's manufactured products, and to receive for such services a commission of 5 per cent. The written contract did not authorize the agent to buy from his principal, but the agent pleaded that, shortly after the contract was made, his principal, by parol agreement, altered it to the effect that on all foreign business the principal was to quote the agent a price f. o. b. car or ship side Savannah, in which price was to be included a 5 per cent. commission to the agent, who was authorized to sell the principal's goods for delivery foreignwise; the agent taking all risk incident to fluctuations in freights, exchange, insurance, inability to procure bottoms, etc., and such profits as might accrue from the foreign business was to belong to the agent. The agent further pleaded that immediately after the foreign business was begun a course of dealing was pursued by the parties which was a departure from the written contract, in that the agent sold certain products of his principal quoted by the principal to him, and thereafter the agent assumed all the hazard of selling and transporting same to foreign markets. This departure was acquiesced in and adopted by both parties to the contract. I do not think, under the preponderance of the evidence, that any parol modification of the written contract was made by the parties.

[1] On the feature of the case that the parties had departed from the contract by a course of dealing implicative of a mutual understanding that consignments sold by the agent in foreign markets was to be accounted for at prices quoted to the agent by the principal, less 5 per cent. commission, I find that the evidence is too inconclusive to authorize this deduction. The Code of Georgia (section 3582) declares that "without the express consent of the principal after a full knowledge of all the facts, an agent employed to sell cannot be himself the purchaser." One cannot lawfully do by indirection what he is positively forbidden to do. The practical effect of a sale by the agent in foreign markets, where the agent was to assume all risks and contingencies of loss, and take all the profits, would seem to be nothing more than a sale to himself. Such a sale is forbidden, unless by the express consent of the principal, which I find was not given.

But, even if the doctrine of mutual departure from a written contract by a course of dealings be applicable to a contract between a principal and an agent to sell, I do not think the evidence sufficiently strong to infer that the principal had notice that the agent was pursuing a course of conduct variant with the written contract, and acquiesced in

the agent's contention that the latter was entitled to receive all profits of goods sold in foreign markets above the quotations in the principal's invoice of consignment.

[2] The agent did not account for foreign sales. There were no losses, and he claimed the profits adversely to his principal. What effect did his conduct in this respect have on his contractual stipulation for commissions? This query is answered by section 3586 of the Code of Georgia, which declares that an agent who violates his engagement is entitled to no commission.

It was stipulated on the trial that the agent's books correctly show the profits he made on foreign sales. Under my view of the case, the principal is entitled to recover this amount, without deduction for commissions, with 7 per cent. interest thereon from the time the profits which came into the agent's hands should have been remitted to the principal, agreeably to the written contract.

Leave is given to the complainant to enter up judgment accordingly.